THELANDER et ux. v. BECKER. (No. 5817.)

(Court of Civil Appeals of Texas. Austin. Nov. 28, 1917. On Motion for Rehearing, Jan. 16, 1918.)

1. MECHANICS' LIENS &wjp;113(2) — AMOUNT — NOTICE.

A materialman's lien against a building is limited to the amount due from the owner to the contractor when the materialman's notice is served.

2. MECHANICS' LIENS &wjp;115(1) — OWNER'S DEBT TO CONTRACTOR—PAYMENT.

An owner's note to a building contractor *held* not payment of the debt so as to preclude materialmen from thereafter acquiring liens on the owner's property.

3. MECHANICS' LIENS &wjp;113(2) — OWNER'S DEBT TO CONTRACTOR—NOTICE TO MATERIALMEN.

Materialmen are charged with notice whether any debt is due the contractor from the owner when materialmen's notices of liens are filed.

4. MECHANICS' LIENS &wjp;115(2) — OWNER'S DEBT TO CONTRACTOR—PAYMENT.

A building contractor's assignment of the owner's negotiable note as collateral security *held* a payment of the contract price so as to preclude materialmen from thereafter fixing liens against the owner's property.

Appeal from District Court, Travis County; Geo. Calhoun. Judge.

Action by Herman Becker against Frank P. Thelander and wife and another. Judgment for plaintiff, and defendants Thelander and wife appeal. Affirmed in part, and in part reversed and rendered.

Hart & Patterson, of Austin, for appellants. Fiset, McClendon & Shelley, of Austin, for appellee.

## Findings of Fact.

JENKINS, J. (1) On March 14, 1914, appellants owned and occupied as their homestead a certain lot in Austin, Travis county, Tex.

(2) On said. date appellants entered into a written contract with Walter D. Allison, acknowledged as required by law to fix a lien on a homestead, to erect a dwelling house on said lot for the consideration of $4,600, Allison to furnish all material and perform all the labor in connection therewith.

(3) The contract recited that the sum of $4,600 to be paid for said work was evidenced by the promissory note of appellants for that amount, due three years after date, with interest at the rate of 8 per cent. per annum. The note, which was copied in full in the contract, was in the usual form of promissory notes, and was payable to Walter D. Allison, or order.

(4) The contract contained, among other things, the following:

"It is expressly agreed and understood that this note is given in payment of labor and material furnished and used in the construction of a certain two-story residence building [describing the same and the lot], and for the payment thereof a mechanic, materialman, laborer, and contractor's lien is retained * * * and it is agreed and understood that said promissory note may be assigned, and said assignee or purchaser shall have, and be subrogated to, all of the rights and equities of the party of the first part, and to have and to hold the same, together with all the rights and appurtenances to the same belonging or in any wise incident or appertaining."

(5) Said contract was filed in the office of the county clerk of Travis county, June 19, 1914, and was duly recorded by said clerk.

(6) Allison erected the dwelling in accordance with the plans and specifications of the contract.

(7) Allison purchased lumber from appellee, a lumber dealer, to the amount of $2,-347.24, and used the same in said building. Appellee has not been paid for the same or any part thereof.

(8) On May 26, 1914, Allison, being indebted to the Austin National Bank in the sum

of $3,000, assigned said $4,600 note to said bank to secure said indebtedness, and $1,000 additional that day loaned him by the bank, and also to secure any amount that he might thereafter become indebted to said bank. Prior to the notice served on appellants, as hereinafter stated, Allison became indebted to said bank in the additional sum of $500.

(9) When said note was assigned to the bank it did not know that Allison had purchased lumber from appellee, nor that Allison was indebted to appellee.

(10) Prior to the notice served on appellants by appellee, and prior to the assignment of the note to the bank, appellants paid to Allison on said contract the sum of $2,963.60. No credit was entered on the note, and the bank had no knowledge of such payment when the note was assigned to it.

(11) On June 17, 1914, appellee served on appellants a notice, as required by law for fixing a lien on a homestead, that Allison was indebted to him for lumber used in the erection of said house in the sum of $2,347.24.

(12) Subsequent to the service of said notice, and prior to the filing of this suit, appellants paid to the bank the full amount of said note, principal, and interest, and the same was applied by the bank to the payment of said indebtedness of Allison to it.

(13) Appellants did not know until notice was served on them by appellee that Allison had bought lumber of appellee, nor that he was indebted to appellee.

(14) Judgment was rendered in favor of appellee against Allison for $2,347.24 and interest, and establishing a lien in favor of appellee against appellants for $1,762.38, with legal interest from date of said judgment.

### Opinion.

[1] 1. One who has a house erected does not owe a materialman for the material furnished the contractor and used in the erection of the house. Such debt is the debt of the contractor; but by serving the statutory notice on the owner, the materialman may fix a lien on the building to secure his debt to the extent of the indebtedness of the owner to the contractor when such notice was served. Such notice has the same effect as garnishment in ordinary cases. Lonergan v. Trust Co., 101 Tex. 80, 104 S. W. 1061, 106 S. W. 876, 22 L. R. A. (N. S.) 364, 130 Am. St. Rep. 803; Berry v. McAdams, 93 Tex. 431, 55 S. W. 1112.

2. If the owner owed nothing to the contractor when the notice was served, the materialman acquired no lien by the service of the notice. Ricker v. Schadt, 5 Tex. Civ. App. 460, 23 S. W. 907; Brick Co. v. Stratton, 53 S. W. 703; Fall v. Nichols, 43 Tex. Civ. App. 582, 97 S. W. 145.

3. It follows as a corollary to the preceding statements that the owner will be protected to the extent of payments made by him prior to the service of the notice. Wil-

199 S.W.—54

kerson v. McMurry, 167 S. W. 275: Nichols v. Dixon, 85 S. W. 1051; Riter v. Oil Co., 19 Tex. Civ. App. 516, 48 S. W. 758.

[2] 4. Appellants assert that the execution of the note was payment for the work to be done. It was not payment in the sense that it extinguished the debt due by appellants, or changed the nature of such indebtedness. The contract expressly provided that the note was secured by a mechanic's lien. It was simply evidence of the indebtedness, and as long as it was held by the contractor he had a lien on the house to secure his debt, and materialmen might have fixed their liens on the house to the extent of the indebtedness of appellants to the contractor. But they could fix no lien after appellants ceased to be indebted to the contractor. So the issue here is, Did appellants cease to be indebted to Allison when he assigned the note to the bank?

[3] 5. While the Constitution and the statute give materialmen a lien for material furnished the contractor to the extent of the indebtedness of the owner to the contractor when the statutory notice is served, whether or not any such debt is then due depends upon the contract between the owner and the contractor, of which those furnishing material must take notice. Fullenwider v. Longmoor, 73 Tex. 480, 11 S. W. 500; Henley v. Wadsworth, 38 Cal. 356; Riter v. Oil Co., supra; Falls v. Nichols, 43 Tex. Civ. App. 582, 97 S. W. 145.

[4] 6. The contract in the instant case showed that appellants had executed to the contractor a negotiable promissory note. This was evidence of their indebtedness to him so long as he was the owner of said note. But the note being negotiable, it was evidence of appellants' indebtedness to the holder of said note, if the same should be assigned in due course of trade. It is absurd to say that the appellants became indebted to the assignee of such note, and at the same time remained indebted to the payee for the sum evidenced by the note after he had assigned the same.

7. In Glass Co. v. Iron Co., 147 S. W. 620, the owner of a building had accepted an order from the contractor for the balance due on the contract. It was there held that the acceptance of the order extinguished the debt to the contractor, and that a materialman could not thereafter fix a lien on the building. To the same effect was the holding in Beilharz v. Illingsworth, 62 Tex. Civ. App. 647, 132 S. W. 106.

Appellee seeks to distinguish these cases from the instant case, in that there the orders were given to materialmen who might have fixed their liens, but that here the bank did not furnish material or labor in the construction of the building. We do not regard this circumstance as important. Had the materialmen in those cases fixed their liens, they would not have been entitled to have re-

ceived payment in full, as they did by the acceptance of orders, but only their pro rata with other materialmen or laborers who may have also fixed their liens. R. S. art. 5637. The point decided in Glass Co. v. Iron Co., supra, was that:

"The acceptance of the order * * * had the effect of passing to the lumber company the ownership of that balance. Nothing thereafter remained in the hands of Crowdus (the owner of the building) to which the contractor might lay claim, and nothing to which subsequent liens could attach." 147 S. W. 623.

So in this case, the assignment of the note had the effect of passing to the bank the ownership of the entire debt evidenced by the note. Nothing thereafter remained in the hands of appellants to which the contractor might lay claim. Upon motion for rehearing the court said that efforts to establish liens against the property after acceptance of the order, and thereby making Crowdus the personal debtor of the lumber company, "would be as ineffectual as if the debt had been discharged in cash, instead of this system of novation."

The legal effect of an order when accepted is to discharge, pro tanto, any debt that the acceptor might owe the party giving such order. The legal effect of indorsing a negotiable promissory note is to order the maker to pay the amount thereof to the assignee. It requires no acceptance on the part of the maker to give effect to such order. It is a part of his original contract to pay the debt evidenced by such note to the order of the payee.

If the issue as to whether the bank had a lien on the house should be deemed of any importance, the answer is that as assignee of said note it did have the contractor's lien for the full amount of the indebtedness to Allison, as especially provided in the contract.

We do not think that the cases of McGuire v. Bidwell, 64 Tex. 43, and Johnson v. Improvements Co., 88 Tex. 505, 31 S. W. 503, are in point even upon the issue as to whether giving a negotiable note is payment of the debt. In those cases it was held that whether the giving of a promissory note amounts to payment depends upon the facts of the particular case. In both of the cases referred to, it clearly appeared that the notes were not given in payment of a debt, but only as a basis for credit. Had the notes in these cases become the property of a third party, a different question would have been presented. In such case we think it would have been held that by assigning the note the payee had elected to treat the same as payment pro tanto.

In McGuire v. Bidwell, supra, the court said:

"The rule is that a negotiable promissory note of the debtor does not amount to the payment of the indebtedness for which it is given unless the circumstances show that such was the intention of the parties."

We recognize this rule as between the maker and the payee of the note, but, applying it in all of its strictness, we think the circumstances of this case clearly show that it was the intention of the parties that the debt to Allison might be paid by his assignment of the note, and thereby substituting another party as the owner of such debt. We quote from said contract as follows:

"It is agreed and understood that said promissory note may be assigned, and said assignee or purchaser shall have and be subrogated to all of the rights and equities of the party of the first part" (Allison).

One of the rights of Allison was to be paid the debt evidenced by the note. This right, it was provided by the contract, he might assign, and upon doing so such right no longer belonged to him but to the assignee of the note. The rights of his creditors to fix materialmen's liens were dependent upon his rights to collect from the owner of the house the debt evidenced by the note, in the absence of the same having been garnisheed by fixing the statutory lien.

It is true the note was assigned to the bank as collateral, but such transfer constituted the bank a purchaser for value, and the collection of the same by the bank, and the application of the proceeds to the debt of Allison, entitled the appellants to the same protection that they would have had had they paid the same to Allison. Rawles v. Perkey, 50 Tex. 316; Kauffman v. Robey, 60 Tex. 310, 48 Am. Rep. 264; Martin v. Bank, 102 S. W. 131.

We are of the opinion that, under the facts as herein stated, the appellants were not indebted to Allison at the time the notice was served upon them by appellee, and therefore the appellee did not acquire a lien against the property of appellants by service of such notice.

The judgment of the trial court against Allison, from which no appeal was taken, is affirmed. But the judgment against appellants establishing a lien against their property is reversed, and judgment on said issue is here rendered in behalf of appellants that appellee take nothing by his suit against them, but that they go hence without date, and recover of appellee their costs in this behalf expended.

Affirmed in part, and in part reversed and rendered.

### On Motion for Rehearing.

The request of appellee that we supplement our finding of fact No. 3 is granted as prayed for. The motion for a rehearing is otherwise overruled.

Motion overruled.