RICE COMMON SCHOOL DIST. NO. 2 et al. v. OIL CITY IRON WORKS. (No. 7365.)

(Court of Civil Appeals of Texas. Dallas. Nov. 13, 1915. On Motion for Rehearing, Dec. 24, 1915.)

1. MECHANICS' LIENS ☜13—PROPERTY SUBJECT TO LIEN—PUBLIC BUILDINGS.

A mechanic's lien cannot be enforced against a public school building.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. §§ 14, 15; Dec. Dig. ☜13.]

2. MECHANICS' LIENS ☜114—EQUITABLE ASSIGNMENTS—SUFFICIENCY OF EVIDENCE.

In an action against a school district for the value of materials furnished contractors for use in the construction of a school building, evidence *held* to show that, when the contractors "O. K.'d" plaintiff's claim, it was intended that such claim was to be paid by the school trustees out of the school fund appropriated for the school building.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. § 149; Dec. Dig. ☜114.]

3. MECHANICS' LIENS ☜114—EQUITABLE ASSIGNMENTS—BUILDING CONTRACTS—LIABILITY.

Where plaintiff's claim for materials furnished contractors for use in the construction of a building was "O.K.'d" by the contractors with intent that it should be paid by the trustees out of the fund appropriated for the school building, and the trustees were duly notified, and it was recognized by all parties that the account was just and rightfully chargeable to such fund, and thereafter the trustees paid on junior claims or to the contractors amounts in excess of plaintiff's claim, the school district was liable for the amount of such claim, though there was no written or verbal order specifically directing its payment by the trustees, and though no estimate was made therefor by the architect, and the contractors subsequently defaulted in their contract, and it cost the district all that was due on the contract to finish the building.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. § 149; Dec. Dig. ☜114.]

On Motion for Rehearing.

4. PRINCIPAL AND SURETY ☜89—RELEASE OF SURETY—CONSIDERATION FOR RELEASE.

Where after the abandonment of a contract for the construction of a school building by the contractors it was agreed by the contractors' surety and the district that the surety should complete the building, but it was subsequently agreed that the school district should take charge of the building and complete it, and that the surety should be released, and the surety bond was thereupon canceled and surrendered, this agreement constituted a valuable consideration for the surety's release, and the district was not entitled to judgment against the surety for the amount of a judgment recovered against it by one furnishing materials to the contractor.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§ 133, 133½, 136–139; Dec. Dig. ☜89.]

Appeal from Navarro County Court; R. R. Owen, Judge.

Action by the Oil City Iron Works against Rice Common School District No. 2 and others. From a judgment against them, the School District and the defendant Fidelity & Deposit Company of Maryland appeal. Affirmed in part and reversed and rendered in part.

Luther A. Johnson, J. S. Callicutt, and Jno. H. Rice, all of Corsicana, for appellants. Richard Mays, of Corsicana, for appellee.

RAINEY, C. J. Appellee brought suit against the Rice common school district No. 2 and the three trustees thereof, to wit, T. W. Neal, J. W. South, and J. B. Fortson, and Johnson & Meier, a firm of contractors composed of D. F. Johnson and L. G. Meier, the Fidelity & Deposit Company of Maryland, bondsmen for said contractors, Waller & Fields, architects, a firm composed of M. L. Waller and E. Stanley Fields, and their superintendent, Edward Norris, to recover a judgment jointly and severally against all of said parties for $225 balance due for material furnished and used in the construction of a school building at Rice, Tex.

The petition, in substance, alleged: That in the year 1911 said school district, through its trustees, entered into a contract with said Johnson & Meier, contractors, to erect a school building at Rice for the consideration of $14,330, according to certain plans and specifications to be made by Waller & Fields, architects, who, with said Norris, their superintendent, were to represent the trustees in directing the construction of said building according to said contract. Said Johnson & Meier executed a bond for the faithful performance of said contract, payable to said school district, in the sum of $7,000, with said Fidelity & Deposit Company as surety thereon. That Johnson & Meier, contractors, purchased of appellee certain material, which was used in said building, amounting to $325, of which $100 was paid, leaving due $225. That defendants knew appellee had furnished said material; the said contractors having accepted same and permitted it to be used in said building. That on February 19, 1912, appellee gave notice to the school district and its trustees of its claim against Johnson & Meier, and thereby fixed a lien against said building, the land used in connection therewith, and also against the money and fund then and thereafter payable to Johnson & Meier, and the same was recognized and accepted by the district and its trustees, and thereafter Waller & Fields and Edward Norris made an estimate showing that the contractors were entitled to the payment of $225 to cover amount of indebtedness due appellee by contractors, and that Johnson & Meier (contractors) transferred to appellee that amount of money then due and thereafter to become due and in the hands and control of defendants, and which estimate and assignment was presented by appellee to the school district and its trustees and accepted by them, and that said district had funds on hand at that time due the contractors more than enough to pay the amount of plaintiff's debt. That shortly before the completion of the building all of the other defendants entered into a conspiracy against the contractors, Johnson & Meier, and illegally forced them to abandon the completion of the building, and at that time the trustees had funds on hand due the contractor sufficient to pay appellee's debt and other debts owing by contractors, but that trustees refused to pay same, and unlawfully retained said funds in their hands, retaining a larger sum than was necessary to complete the building. That the trustees converted to their own use and benefit and diverted the building fund belonging to contractors, and which had been assigned to appellee, to the payment of other creditors. That the defendant Fidelity & Deposit Company of Maryland wrongfully took charge of the building, and assumed to complete same and pay off the creditors of Johnson & Meier, including appellee, and it was its duty to turn over the building free of claim or debt, and appellee was subrogated under the bond to all rights of the school district and its trustees to enforce against said bonding company the amount due appellee by all defendants. That later the school district and its trustees took the completion of the building out of the hands of the bonding company, and employed another to finish it, and the trustees agreed to surrender the bond and release the bonding company from liability, and the school district, by its trustees, then completed the building, and "plaintiff says at this time that the school district and its trustees had more than enough money then due and owing the contractors to pay off the debt of plaintiff and complete and carry out said contract without loss." That the law required the district and its trustees to retain 10 per cent. of the contract price, to be devoted to the payment of indebtedness of the contractors, and the contract required them to retain 20 per cent. for this purpose, and, if they had done so, they would have had enough money to have paid appellee's debt, but they failed so to do.

The answer of this appellant (Rice school district) put in issue all of the allegations of the petition; denied that it had anything to do with the purchase of material from appellee, or that it or its trustees at any time agreed to pay therefor or assumed the payment thereof, but under the contract Johnson & Meier were to furnish all material for the building, and appellee sold same to the contractors, and it or its trustees knew nothing thereof until long after same had been bought by the contractors from appellee and had already been used in the construction of

the building; denied that any assignment of fund was made by Johnson & Meier to appellee, or that it had any notice of any assignment, or that same was accepted by this appellant, that the school trustees, under the contract, were not to pay out money except on estimates furnished by the superintendent as the work progressed, as shown in paragraph 4 of the building contract, that Edward Norris was the superintendent in charge of the construction, and that the school district paid all estimates promptly as allowed, and especially deny that Edward Norris allowed an estimate of $225.20 to cover indebtedness due appellee, as claimed by it; denied that it, by a conspiracy or otherwise, caused the contractors to quit work on the building; but alleged, on the contrary, that Johnson & Meier failed and refused to furnish material and workmen necessary to comply with their contract, and that their failure so to do was certified to by the architect under the terms of the contract, and that Johnson & Meier voluntarily quit the construction of the building because they were financially embarrassed and could not finish same, that the contract price at which Johnson & Meier undertook to construct the building was inadequate, and that this tended to cause the financial embarrassment of the contractors, that it paid all estimates due Johnson & Meier as allowed, and under the contract said contractors were to complete the building on March 1, 1912, but Johnson & Meier abandoned the work on or about July 1, 1912, the building still being unfinished, and the school district, through its trustees, paid out the remainder of the funds then on hand for the completion of the building according to the plans and specifications, the entire contract price of $14,-330 being paid out and much more for the construction thereof, that the fund was judiciously, necessarily and economically expended, and that after the payment of said amount and the completion of the building none of the building fund on hand remained, and the school district had no funds on hand belonging to the building fund at the time this suit was brought, and that the school district got the entire benefit of the funds in the hands of the trustees for the erection and completion of said building, and that none of the funds were misapplied or converted, that the school district paid all estimates as allowed by the superintendent, and the goods sold by appellee to Johnson & Meier were wrought into the building early in its construction, and were included under estimates furnished by the superintendent soon after the construction of the building begun, and that said estimates were paid to Johnson & Meier by the school district, and, if the plaintiffs did not receive said money, it is not the fault of the school district, that before suit was brought, appellee's claim had been settled and merged in a promissory note payable to appellee and executed and delivered to it by Johnson & Meier for the full amount sued upon, and accepted by appellee in full settlement and satisfaction of the amount sued upon. This appellant also asked for judgment over and against Johnson & Meier, the contractors, and also over and against Fidelity & Deposit Company of Maryland. Judgment by default was rendered against the defendants Johnson & Meier, Waller & Field, and Edward Norris in favor of appellee for the amount sued for. A trial before a court and jury was had as to the other parties, resulting in a verdict and judgment in favor of appellee against Rice common school district No. 2 for the sum of $225, with 6 per cent. interest thereon from April 1, 1912, and in favor of Rice common school district No. 2 against the defendant Fidelity & Deposit Company of Maryland for a like sum, and in favor of Fidelity & Deposit Company of Maryland against Johnson & Meier for the same amount. Under an instructed verdict judgment was rendered in favor of the defendants T. W. Neal, J. W. South, and J. B. Fortson, school trustees, the court holding that there was no individual liability shown as to them. A motion being overruled, the school district and the surety company appealed.

[1] The school building on which a mechanic's lien is sought to be foreclosed is a public one on which such a lien cannot be enforced. This is too well settled under the law to admit of discussion; therefore the lien sought herein will not be further noticed in this opinion.

There are many assignments of error presented, all of which we will not discuss, but confine ourselves to the pertinent facts and the propositions of law that relate to them necessary for a decision of the case. The first question that arises is: Does the evidence show that the contractors, Johnson & Meier, made an equitable assignment of the amount due appellee for material furnished and used in the building of the contract price in the hands of the trustees. If there was an assignment, as claimed by appellee, of a part of said fund sufficient to pay said account, then the court was right in rendering judgment for appellee. The liability of the appellant school district for the payment of said claim depends upon all the testimony adduced on the trial in relation to said claim. On this issue the trial court instructed the jury, in its fifth paragraph as follows:

"If you find and believe from the evidence that Johnson & Meier approved the plaintiff's account, and if you further find and believe that it was the intention of Johnson & Meier in so approving said account, if they did, that such approval, if any, was for the purpose of enabling plaintiff to present said account to the Rice school board for payment by said school board, and if you further believe from the evidence that it was agreed and understood between Johnson & Meier and the plaintiff that such approved account, if any, was to constitute an order, or request, if it did, to the Rice school board to pay said account out

of any moneys, if any, due or thereafter due by said Rice school board to Johnson & Meier under estimates made, and if you further believe that said approved account, if any, was received by the Rice school board from the plaintiff, and if you further believe that said school board, under the circumstances, and in the course of dealing with creditors of Johnson & Meier for materials used on said building, knew that said approval, if any, of said account by Johnson & Meier was intended by them, if it was, as an assignment of a sufficient amount of any funds, if any, then or thereafter to become due to Johnson & Meier by the board of trustees under estimates made, and if you further believe that the approval of said account, if any, by Johnson & Meier was intended by them to operate as authority for the school board to pay plaintiff's account, and if you further believe that such school board under the circumstances understood, or in the exercise of ordinary prudence would have known, that such approval, if any, of said account was intended by Johnson & Meier, if it was, to operate as authority for said school board to pay said account, and if you further believe that at any time after said school board received plaintiff's claim approved by Johnson & Meier, if it was, the said school board under estimates made, if any, under the terms of the original building contract, became indebted to the said Johnson & Meier in an amount of money equal to or more than the amount of plaintiff's debt, then, if you so find and believe, you will return a verdict for the plaintiff against the Rice common school district No. 2 for the amount of plaintiff's claim."

[2] Were the facts grouped by the court warranted by the evidence, and, if so, did they warrant a recovery by appellee? We think so. There is no controversy about said material being furnished said Johnson & Meier for use in the building, and that such material was delivered and placed in the building.

"The building contract was let September 5, 1911, wherein Johnson & Meier, contractors, agreed to furnish all material and labor and to construct and complete the building by March 1, 1912, for $14,330 payable 'on certificates of superintendent from time to time as work progresses, to wit, 80 per cent. of estimated value of the same, subject to additions and reductions as hereinafter provided, estimates to be made every 15 days upon material furnished and labor done, and the remainder on satisfactory completion and acceptance of the entire work after the expiration of ten days.'"

The said material was furnished during the month of October, 1911, and amounted to $325.20. In February, 1912, after delay in payment, Johnson & Meier, at appellee's instance, wrote on the face of said account the letters "O. K.," and signed their names thereto thus: "O. K. Johnson & Meier." On February 19, 1912, appellee wrote to the chairman of the school board, and inclosed therein the O. K. account, which letter is as follows:

"Corsicana, Texas, Feb. 19, 1912.

"Chairman School Board, Rice, Texas—Gentlemen: We inclose you account $325.20 that we have against Johnson & Meier, contractors on your Rice school building, duly approved. We have a letter from Mr. Fields, the architect, saying that Mr. Edward Norris, the superintendent, would be up from Navasota, and would give enough estimate to take up this and other claims. We kindly ask that you check us for it in the next few days, as we broke over our usual custom in shipping this material open, and it

had been running more than four months. We beg to remain,

"Yours truly,    Oil City Iron Works,
"Per Wm. Clarkson."

Said letter and account were duly received by said trustees. Prior to this Johnson had refused to O. K. the bill, and then phoned to appellee he would O. K. it if appellee would ship the balance of the material. Appellee then got it ready for shipment, but before doing so he telephoned to Norris, an employé of Waller & Fields, superintending the building, and told him he would ship with bill of lading attached to cover the whole account. Norris said not to do that; "we are going to take care of you." Then appellee let the shipment go open. Afterward appellee called up J. W. South, one of the trustees, and asked him to try to get the money. After this Clarkson, appellee's agent, saw Neal and Norris in Rice, who handed him a check for $100 on the account, which was cashed. Clarkson thinks Johnson was present when the check was handed him by Norris and Neal. Albritton, who was superintendent of public instruction in Navarro county, stated he, at the instance of Clarkson, called up T. W. Neal, secretary of the Rice school board, and had a talk over the phone with reference to a settlement of appellee's claim. "Neal said he was secretary of the board, and he would give an order for the money when the bill was O. K.'d by the contractors and the architect." He remembered of no limitation made by Neal of the architect having to make an estimate or reference to the board having the money. Neal, one of the trustees, testified that he was secretary of the board, kept the minutes, the papers, vouchers, and accounts covering all transactions pertaining to said transactions, was an active member of the board, and had exclusive knowledge of the things concerning the records; that he made all payments and signed all checks, etc.; that he was actively engaged in the negotiations and employment of the architects, Waller & Field, and made the contracts with Johnson & Meier; that he told the other trustees about Clarkson's letter, and told Clarkson that the trustees had no money then; that, if the contractors got any later on, they would see that it was paid. There was an estimate signed by M. L. Waller and presented—

"to me once covering the amount of appellee's claim, which was either mailed to me or presented to me by Harvey, and I told him to send it back to appellee. I knew that Johnson & Meier had O. K.'d appellee's account when I got it. They had told us that they wanted to pay appellee, and had given him an estimate on us, if you call that account an estimate. He told Clarkson that he would help him·if he got any money. Fortson, South, and myself and the architect agreed that the school board would guarantee the people who sold material to Johnson & Meier. We gave them a verbal guarantee that they would receive the money for their material. Sometimes I would give them that verbal guarantee, and sometimes the others would do that. The reason the trustees told people who sold material that went into the building that we would

stand security for such stuff as was sold to Johnson & Meier was that they could not buy much on credit, and when anybody sold material the school board would see that they got their money."

[3] When all the evidence is considered, we think it fairly shows that at the time the Johnson & Meier claim was O. K.'d it was intended by them and by Clarkson, appellee's agent, that said claim was to be paid by the trustees out of the school fund appropriated for the school building. The trustees had guaranteed to people who sold material to the contractors for said building the payment of such bills, and it seems all that was necessary to be done was that such bills be properly O. K.'d. This bill was duly O. K.'d, the trustees were duly notified, and, while there was no written or verbal order specifically directing the trustees to pay this bill out of the building fund, yet we think it was so intended and recognized by all the parties that the account was for material, was just, and was rightfully chargeable to said school fund.

Said account being a charge upon said school fund, and not having been paid by the trustees, should there be judgment against them for said amount? After April 19, 1912, said trustees became obligated to pay said amount, if there was in their hands sufficient of said building funds for that purpose. From said April 19th until Johnson & Meier abandoned the contract, July 1, 1912, the trustees paid to Johnson & Meier, $8,332.02 and on estimates made to three other parties a sum aggregating $2,088, from which it would appear that during that time the trustees held sufficient funds with which to pay appellee's claim, which they had promised to do. Appellee's claim being a preference one, and the trustees having paid out funds on claims that were junior thereto, the trustees cannot defeat appellee's claim on the ground that no estimate was made for him by the architect, or that the contractors had defaulted in their contract, and it cost them all that was due on the original contract to finish the building. That, under the facts, the unexpended balance of the contract price on July 1, 1912, was necessary for the completion of the building is doubtful, and we deem it unnecessary to determine that point, as the evidence clearly shows that the trustees had funds out of which appellee's claim should have been paid before said contract was abandoned.

On July 1, 1912, Johnson & Meier defaulted in their contract to complete the building, and abandoned same. There was $4,090 remaining unpaid of the contract price, and the trustees made arrangements with the surety company to complete the building, but soon after the trustees concluded they could save money by having the work done themselves, when by agreement of all parties the trustees canceled the surety bond, released the surety company, and finished the building. By this action of the trustees the surety company was released from all liability.

The evidence fails to show any conspiracy, as alleged by appellee, and we are unable to see upon what theory is predicated the right of judgment against said surety company, and it is reversed and rendered as to it.

We think the evidence supports the verdict in all other respects. Judgment with the foregoing exception as to the surety company is affirmed.

Affirmed in part and reversed and rendered in part.

### On Motion for Rehearing.

In passing upon the right of the Rice common school district No. 2 to recover a judgment against the Fidelity & Deposit Company, we said:

"The evidence fails to show any conspiracy, as alleged by appellee, and we are unable to see upon what theory is predicated the right of judgment against surety company, and it is reversed and rendered as to it."

Appellee recovered no judgment against the bonding company, but the Rice common school district No. 2 did recover a judgment for the amount, and judgment was rendered against it. So we were in error in predicating our judgment on the ground we did.

[4] While a wrong reason was given, the correct result, under the facts, is the same. When Johnson & Meier abandoned the construction of the building, the bonding company agreed with the trustees of the Rice district No. 2 to take charge and complete it. Some time after it was further agreed between them that the Rice school district should take charge of said building and complete it, that the bonding company should be released from said bond, and the bond was canceled and surrendered by the trustees. This agreement constituted a valuable consideration for the release of the bonding company from any obligation on the bond. Therefore there was no obligation upon which appellant was authorized to recover from the bonding company.

The motion for rehearing is overruled.