GORDON–JONES CONST. CO. et al. v. WELDER et al. (No. 5910.)

(Court of Civil Appeals of Texas. San Antonio. Feb. 20, 1918. Rehearing Denied March 20, 1918.)

1. BANKRUPTCY  ⬤⟀215 — JURISDICTION — CONTRACTOR'S BANKRUPTCY.

A contractor's bankruptcy does not deprive a state district court of jurisdiction to distribute funds in the owner's hands among mechanic's lien claimants and subcontractors.

2. MECHANICS' LIENS  ⬤⟀3—STATUTES—VALIDITY.

Rev. St. 1911, art. 5623, limiting recovery by subcontractors to the original contract price, does not violate Const. art. 16, § 37, guaranteeing a lien to materialmen and laborers.

3. MECHANICS' LIENS  ⬤⟀206 — ASSIGNMENT OF CONTRACT—EFFECT.

Where a contractor's assignment of his contract was recognized by the owner before subcontractors and lien claimants gave the statutory notice of their claims, the assignee's rights were superior to those of such subcontractors.

4. MECHANICS' LIENS  ⬤⟀281(4) — AMOUNT DUE CONTRACTOR — SUFFICIENCY OF EVIDENCE.

In a mechanic's lien proceeding, evidence that the contractor assigned the contract before abandoning it *held* to sustain a finding that nothing was due the contractor at the date of abandonment.

Appeal from District Court, Victoria County; Jno. M. Green, Judge.

Suit in nature of an interpleader by John J. Welder against the Gordon-Jones Construction Company and others. From a judgment, certain defendants appeal. Judgment reformed and affirmed.

C. A. Keller, of San Antonio, and R. L. Daniel and C. F. & C. C. Carsner, all of Victoria, for appellants. H. M. Aubrey, of San Antonio, and Proctor, Vandenberge, Crain & Mitchell, of Victoria, for appellees.

SWEARINGEN, J. John J. Welder, the appellee, filed this suit in the nature of an interpleader against the appellants, Gordon-Jones Construction Company, the Alamo Iron Works, Peden Roofing Company, Monarch Metal Manufacturing Company, G. D. Robbins, Texas Glass & Paint Company, Chas. Lucas Company, Elgin-Butler Brick & Tile Company, New Jersey Terra Cotta Company, J. Desco & Son, Uhrich Planing Mills Company, R. P. Field, and the Collinsville Manufacturing Company, and against a number of other parties who did not appeal from the judgment of the trial court. The defendants were materialmen, subcontractors, laborers, the original contractor and its bondsmen, and the Victoria National Bank, an assignee of the contractor. The purpose of the suit was to secure a legal adjustment of the respective rights of all parties in and to the contract price promised by the owner, Mr. Welder, to the contractor, the Gordon-Jones Construction Company, and also to determine the liabilities of the contractor and its bondsmen to Mr. Welder.

Without the intervention of a jury, the court rendered judgment dismissing many of the defendants, none of whom appealed. The judgment decreed:

"That after all due allowances to the plaintiff (Welder) under and by virtue of his contract with the defendant the Gordon-Jones Construction Company there remains in his hands the sum of $17,598; that out of said fund the defendant the American Cement Plaster Company is entitled to be paid the sum of $1,056.28, the defendant the American Three-Way Prism Company is entitled to be paid the sum of $858.32, and the defendant Al La Fleur is entitled to be paid the sum of $556, of which amount the plaintiff is entitled to receive the sum of $185 by virtue of written assignment executed by the said defendant; that after the three payments indicated above are made the defendant the Victoria National Bank, of Victoria, Tex., is entitled to be paid out of said fund in full the promissory note executed by the Gordon-Jones Construction Company to said bank for the princi-

pal sum of $11,000, dated December 15, 1913, and bearing interest at the rate of 8 per cent. per annum until paid, interest payable annually, and is likewise entitled to be paid the balance of $650, balance due upon a promissory note for $2,650, executed by the Gordon-Jones Construction Company to the said bank, dated December 15, 1913, with interest on said balance from said date until paid at the rate of 8 per cent. per annum, interest payable annually, aggregating the sum of $14,633.34; that after the above-mentioned payments are made out of said fund the remainder thereof, or so much of the remainder as may be necessary to pay 46⅔ per cent. of the claim of the defendant the Monarch Metal Manufacturing Company, which, for the purposes of this decree, is fixed at $2,135, should be applied to said claim of said defendant; then, after this amount has been paid, the remainder of said fund, or so much thereof as may be necessary, shall be distributed in proportion to the respective amounts of the unpaid balance of their claims between the said Monarch Metal Manufacturing Company and the defendant the Alamo Iron Works, whose claim, for the purposes of this distribution, is hereby fixed at the sum of $1,782.51. No lien is held to exist in favor of either defendant named in this section. After the payment above set forth, out of said fund, the remainder thereof, if any, should be distributed among the remaining defendants, in proportion to the respective amounts of their claims, excepting as hereinafter set forth, said claims of said defendants, for the purpose of this distribution, being fixed as follows:

| | |
|---|---:|
| R. P. Field | $ 320 15 |
| Uhrich Planing Mills Company | 2,325 00 |
| Elgin-Butler Brick & Tile Company | 256 10 |
| Collinsville Manufacturing Company | 739 79 |
| J. Desco & Sons | 1,157 03 |
| New Jersey Terra Cotta Company | 872 87 |
| Texas Glass & Paint Company | 393 83 |
| American Paint Company | 1,433 50 |
| Chas. Lucas Company | 139 00 |
| Peden Roofing Company | 517 50 |
| National Marble Company | 431 22 |

"Provided, however, that no distribution shall be made of any of said funds to the defendant J. Desco & Sons or to the defendant the Collinsville Manufacturing Company until each and all of the other distributees under this section shall have been paid 50 per cent. of the amount of their claims, as herein fixed. When fifty per cent. is paid to each of the remaining distributees named in this section, then the said defendants the Collinsville Manufacturing Company and J. Desco & Sons shall participate in the distribution of the remainder of said fund, in proportion to the amount of their respective shares. No lien is held to exist in favor of either defendant named in this section. Each and all of said above-named defendants are entitled to a judgment for the full amount of the claim fixed in favor of each against the defendant the Gordon-Jones Construction Company, and from its trustee in bankruptcy, H. M. Abernathy, subject only to such payments as may be made upon their indebtedness from the distribution of this fund."

The original petition alleged a contract whereby the Gordon-Jones Construction Company bound itself to construct a building for the appellee Welder for a stipulated price; that in accordance with the contract the contractors partially erected the building, when it abandoned the contract, after which the owner, Mr. Welder, as stipulated in the contract, completed the building according to the contract specifications; before the abandonment of the contract the contractor was paid by the owner 80 per cent. of the archi-

tect's estimates; to complete the building after the abandonment by the contractor, the owner spent a large sum of money; that by reason of delay in completion of the building the owner suffered damages liquidated by the terms of the contract. It was alleged that a large amount of the contract price remained in the owner's hands which he desired to pay to those entitled to it.

The appellees herein severally answered, setting out their accounts for material or labor or their subcontracts, stating the amount claimed by each, and each claimed a mechanic's or materialman's lien on the building. Each claimed a personal judgment against the owner as well as against the contractor.

No objection being raised in appellants' briefs to the trial court's findings of fact, except the twentieth, which we find to be supported by the evidence, we adopt them as our findings of fact:

"Conclusions of Fact.

"First. The plaintiff, John J. Welder, on, to wit, the 23d day of November, 1912, contracted with the defendant The Gordon-Jones Construction Company for the erection of the five-story bank and office building described in the pleadings, the plaintiff being the owner and the said construction company the contractors, the total consideration to be paid being $135,949.

"Second. That, in accordance with the terms of said contract, the contractor furnished plaintiff bond in the sum of $67,874.50 to secure to plaintiff the faithful performance of said contract, on which said bond the Texas Fidelity & Bonding Company was surety.

"Third. That by the terms of said contract the construction company undertook to complete the said building within 220 working days from the date of the contract, and in case of failure so to do the said construction company contracted to pay to plaintiff as liquidated damages the sum of $50 per day for each and every day it should be in default in the performance of this provision; any sums of money falling due under this provision to be retained by plaintiff out of any sums of money in his hands due or to become due to the contractor.

"Fourth. That said contract also provided, in substance, that if the contractor should for any reason fail in the performance of any of the stipulations of said contract, the owner should be at liberty to terminate the employment of the contractor and to complete the work and provide necessary material therefor, and in such case the contractor should not be entitled to receive any further payments under said contract, but provided that the bondsmen of the contractor should have the right, should they so desire, to complete the contract in case of such default.

"Fifth. The contract further provided, in substance, that if the contractor should fail to pay any claim for which, if established, the owner of the premises might become liable, the owner should have the right to retain an amount of money sufficient to completely indemnify him against such claims, and should there prove to be any such claim after all payments were made, the contractor should refund to the owner all amounts that the latter should be compelled to pay. The bond given binds the contractor and its surety to fully indemnify and save the owner harmless against all loss, damages, and cost which he may suffer or incur by reason of the failure of the construction company to carry out and perform its contract.

"Sixth. That after the execution of said contract and bond the defendant the Gordon-Jones

Construction Company began the erection of said building and continued said work until the 29th day of January, 1914, on which date it abandoned the work and notified plaintiff that it could not complete the same, the building then being far from complete.

"Seventh. That upon said abandonment by the contractor the surety on the bond, the Texas Fidelity & Bonding Company having been notified, waived its right to complete the building, and the plaintiff thereupon took possession and prosecuted the work to completion on June 1, 1914.

"Eighth. That during the progress of the work, and prior to the abandonment of the same, the plaintiff paid to the defendant upon architect's estimates furnished in accordance with the provisions of the contract the sum of $101,912.66, the last estimate of $8,000 having been paid on December 15, 1913.

"Ninth. That the construction company failed to complete the building within the time specified in the contract, and, due allowance being made for Sundays, holidays, and weather conditions, the plaintiff is entitled to compensation for 151 days' delay over and above said time limit, and that the actual damages suffered by plaintiff by reason of said delay was $30 per day or a total of $4,530.

"Tenth. That the cost to the plaintiff of completing the building for labor and material, after the abandonment of the same by the contractor, was $9,297.84, which amount was certified as correct by the supervising architect under a provision of the contract making their certificates conclusive as to such cost. But I also find, aside from said certificate, that this amount was actually expended by plaintiff to complete the building under the terms of the contract.

"Eleventh. That when the defendant the Gordon-Jones Construction Company abandoned the construction of the building January 29, 1913, said defendant was indebted to the various defendants herein named for labor and material furnished in the construction of said building, as follows:

American Cement Plaster Company $1,056 28
American Three-Way Prism Company 858 32
Al La Fleur...................... 556 00
Monarch Metal Manufacturing Company ........................ 2,135 00
Alamo Iron Works................ 3,342 52
R. P. Field..................... 320 15
Uhrich Planing Mills Company..... 2,325 00
Elgin-Butler Brick & Tile Company 256 10
Collinsville Manufacturing Company 1,479 40
J. Desco & Sons................. 2,314 06
New Jersey Terra Cotta Company.. 872 87
Texas Glass & Paint Company...... 393 83
American Paint Company.......... 1,433 50
Chas. Lucas Company............. 139 00
Peden Roofing Company........... 517 50
National Marble Company......... 431 22

"Twelfth. That in pursuance of an agreement with the Gordon-Jones Construction Company, by which plaintiff agreed to pay the various creditors of said construction company on said building 50 per cent. of all claims approved by the construction company, plaintiff paid to the defendant J. Desco & Sons the sum of $1,157.03 on the ——— day of ———, 1914, to defendant the Alamo Iron Works the sum of $1,560.01 on the ——— day of ———, 1914, to defendant the Collinsville Manufacturing Company the sum of $739.70 on the ——— day of ———, 1914, to defendant, the Texas Glass & Paint Company the sum of $51.28 on the ——— day of ———, 1914, and to defendant the Victoria Planing Mills the sum of $22.50 on the ——— day of ———, 1914, said payments aggregating $3,530.-52, and the Gordon-Jones Construction Company was at the time of such payments indebted to each of said defendants to whom payments

were made for double the amount so paid, for labor and material furnished in said building, and the accounts of each and all of whom were approved by the defendant construction company.

"Thirteenth. That the cost of extras not covered by the contract which were incorporated in said building, over and above the reductions in construction made during the progress of the work, amounted to $921.73, which should be added to the contract price of the building.

"Fourteenth. That at the completion of the building by plaintiff there remained in his hands the sum of $17,598.66, due allowance being made for all payments made by him, the cost of completion of the building and the demurrage to which he was entitled as actual damages, as above set forth.

"Fifteenth. That on the 15th day of December, 1913, the defendant, the Gordon-Jones Construction Company executed its two certain promissory notes, payable to the defendant the Victorial National Bank, one for $11,000, and the other for $2,650, both bearing interest at the rate of 8 per cent. per annum until paid, interest payable annually, the first-mentioned note being given for funds with which to pay for labor and material entering into the construction of the building, and $650 of the last-mentioned note being for the same purpose, the remaining $2,000 being for other purposes having no connection with the plaintiff's building, and was afterward paid and the note credited with that amount; that there was due upon said $11,000 note and the $650 balance of the $2,650 note at the time of this trial, principal and interest, the sum of $14,633.34, excluding attorney's fees not claimed.

"Sixteenth. That the defendant the Gordon-Jones Construction Company, for the purpose of securing the payment of the $11,000 note and the balance of the $2,650, did, on the 17th day of December, 1913, by an instrument in writing, transfer, set over, and assign unto the defendant the Victoria National Bank all estimates on said building thereafter to be made, and all amounts of money that should thereafter become due the Gordon-Jones Construction Company under the contract for the erection of said building, and did on the same date notify the plaintiff in writing of such transfer and assignment, and the plaintiff did on that date accept the transfer and assignment so made, and afterward. on the same date, did by an instrument in writing guarantee to the defendant the Victoria National Bank the payment of said notes to the extent of $11,000.

"Seventeenth. That at the time of the payment by plaintiff of the last-named estimate of $8,000 on December 15, 1913, and at the time of his acceptance of the transfer and assignment made by the defendant the Gordon-Jones Construction Company to the defendant the Victoria National Bank of all amounts thereafter to become due, and at the time of plaintiff's acceptance of said transfer and assignment and his guaranty of the payment of $11,000 thereof, the plaintiff had no notice of the claims of any of the defendants herein for labor and material furnished, excepting the following:

The defendant the American Cement
    Plaster Company ..................$1,056.28
The defendant the American Three
    Way Prism Company .............. 858.32
The defendant Al La Fleur......... 556.00

—each of whom had given written notice to the plaintiff prior to the 15th day of December, 1913, in compliance with the statute for fixing mechanics' and materialmen's liens, and that these named defendants thereafter, within the time required by statute, filed with the county clerk their itemized verified accounts to perfect such liens.

"Eighteenth. That after the last payment by

plaintiff of December 15, 1913, and after his acceptance and guaranty of the transfer and assignment by the defendant the Gordon-Jones Construction Company to the defendant the Victoria National Bank of December 17, 1913, as above set forth, the defendant the Monarch Metal Manufacturing Company gave to plaintiff the statutory notice of its claim amounting to $2,135, and the defendant the Alamo Iron Works gave statutory notice to the plaintiff of its claim, aggregating $1,782.51, and both of said defendants, within the statutory period, filed verified itemized accounts with the county clerk for record.

"Nineteenth. That neither of the remaining defendants herein, to wit, R. P. Field, the Uhrich Planing Mill Company, the Elgin-Butler Brick & Tile Company the Collinsville Manufacturing Company, J. Desco & Sons, the New Jersey Terra Cotta Company, the Texas Glass & Paint Company, the American Paint Company, Chas. Lucas Company, the Peden Roofing Company, or the National Marble Company gave the statutory itemized written notice to plaintiff of their claims nor filed with the county clerk the itemized verified accounts or written contracts required by statute to perfect a lien.

"Twentieth. That the contract provided only for payments upon estimates made by the architects, and no estimate was made after that of December 15, 1913, which was paid by the plaintiff, and there was no amount of money due the contractor at the time of his abandonment of work under it.

"Twenty-First. That the Texas Fidelity & Bonding Company, surety on the contractor's bond, was duly served by the plaintiff with written notices with verified statements of the facts showing the default of the contractor, within the time and in the manner specified and required by the provisions of the contractor's bond.

"Twenty-Second. That the Gordon-Jones Construction Company has been declared bankrupt in the United States District Court of the Western District of Texas, and its affairs are now being administered by a trustee in bankruptcy, to wit, H. M. Abernathy.

"Twenty-Third. That the affairs of the Texas Fidelity & Bonding Company are now being administered by trustees under a trust agreement executed by said company, said trustees being G. N. Bebout and E. N. Gaffney, both of whom are made parties defendant in this cause."

[1] The trustee of the Gordon-Jones Construction Company assigns as error the refusal to sustain his plea in abatement. The proposition is that the Gordon-Jones Construction Company had been adjudged a bankrupt prior to the filing of this suit, and that the bankrupt proceedings were pending when this suit was tried; that therefore the bankruptcy court had exclusive jurisdiction of the cause. There was no error as contended, for we believe the rule is as stated in appellee's counterproposition:

"In a bankruptcy proceeding where money or property are held by a third person, who has a direct interest in the retention and disbursement thereof, and as to which the bankrupt has only a disputed or doubtful claim, the bankruptcy court has no jurisdiction whatever, and any claim on the part of the bankrupt must be asserted by a plenary suit in a court of proper jurisdiction, which in this instance is the district court of Victoria county."

See Loveland on Bankruptcy, vol. 2, § 540, and cases cited; First National Bank v. Chicago Title & Trust Co., 198 U. S. 280, 25 Sup. Ct. 693, 49 L. Ed. 1051; Bardes v. Hawarden Bank, 178 U. S. 524, 20 Sup. Ct. 1000,

44 L. Ed. 1175; In re Heintz, 201 Fed. 338, 119 C. C. A. 576, 29 Am. Bankr. Rep. 19; In re Geller (D. C.) 216 Fed. 558, 32 Am. Bankr. Rep. 629; In re Rathfon Bros. (D. C.) 200 Fed. 108, 29 Am. Bankr. Rep. 22; In re Goldstein, 216 Fed. 887, 133 C. C. A. 91, 32 Am. Bankr. Rep. 802; M. Coppard, Trustee, v. Gardner, 199 S. W. 650.

The assignment is overruled.

[2] The contention is made by the first assignment that article 5623, in so far as it limits subcontractors' rights to recover to the contract price agreed upon by the owner and contractor, is unconstitutional because forbidden by article 16, § 37, of the Texas Constitution, which guarantees a lien to materialmen and laborers.

Our appellate courts have held that the statute is not forbidden by that article of the Constitution. The distinction is made that subcontractors deal with the contractor and have no privity with the owner, whose obligation is solely to the contractor. However, by the article of the statute mentioned subcontractors are given a method for impounding the funds payable by the owner to the contractor and for forcing the payment of that fund to the subcontractors by a lien on the owner's property. This procedure is often spoken of as a form of garnishment by which the subcontractor can secure payment from the contractor's funds that may be payable by the owner.

The statute further provides that after the fund mentioned has been impounded by the statutory procedure the owner's property can be taken to force the rightful payment of the impounded fund to those who invoked the procedure. Horan v. Frank, 51 Tex. 401; First Baptist Church v. Carlton Lumber Co., 173 S. W. 1179 (writ of error denied by the Supreme Court, 183 S. W. xv); First National Bank v. Lyon-Gray Co., 194 S. W. 1146; Lyon-Gray Lumber Co. v. Nacona Cotton Oil Mill, 194 S. W. 633; Texas Glass & Paint Co. v. Crowdus (Sup.) 193 S. W. 1072; Thelander v. Becker, 199 S. W. 848; Kahler v. Carruthers, 18 Tex. Civ. App. 216, 45 S. W. 163; Texas Glass & Paint Co. v. S. W. Iron Co., 147 S. W. 622; Strang v. Pray, 89 Tex. 525, 35 S. W. 1054; Berry v. McAdams, 93 Tex. 434, 55 S. W. 1112; Shields v. Morrow, 51 Tex. 393; Lonergan v. Trust Co., 101 Tex. 80, 104 S. W. 1061, 106 S. W. 876, 22 L. R. A. (N. S.) 364, 129 Am. St. Rep. 803; Cameron v. Terrell, 36 S. W. 102; Cameron v. Trueheart, 165 S. W. 58; Guarantee S. L. & I. Co. v. Cash, 87 S. W. 749; James v. St. Paul Sanitarium, 24 Tex. Civ. App. 664, 60 S. W. 322. The statute is not unconstitutional.

The assignment is overruled.

[3] By the second assignment it is urged that the court erred in rendering judgment in favor of the Victoria National Bank for more than $11,000, the amount guaranteed to the bank by the owner after assignment to it of the contractor's claim for contract price. The transfer was made to the bank

by the contractor, and the transfer was accepted by the owner before any statutory notice was given by any of the appellant subcontractors to appellee Welder. Prior to the statutory notice the owner could make any settlement with the contractor of the contract price without considering the subcontractors. If a settlement was made by which the owner was obligated to pay the assigned fund to the bank, and this settlement was prior to any statutory notice to the owner by the subcontractors, the settlement was valid and binding. In this instance the contractor on December 17, 1913, transferred all its interest in the contract fund to the bank for a valuable consideration. This transfer was accepted by the owner on the same day December 17, 1913. At that time three subcontractors had impounded the fund by statutory notice, and these three obtained judgment for the amount of their claims, and do not appeal. No other claimants gave statutory notice of their claims to the owner until long after the transfer to the bank. Under these facts so much of the contract fund in the owner's hands as was necessary to pay the promissory notes payable to the bank by the contractor to secure which the transfer was made must be paid to the bank. Thelander v. Becker, 199 S. W. 848; Muller v. McLaughlin, 37 Tex. Civ. App. 449, 84 S. W. 687; Fullenwider v. Longmoor, 73 Tex. 484, 11 S. W. 500; Texas Glass & Paint Co. v. S. I. Co., 147 S. W. 620; Wilson v. Sherwin-Williams Paint Co., 160 S. W. 418; Texas Builders' Supply Co. v. Beaumont Construction Co., 150 S. W. 770; Berry v. McAdams, 93 Tex. 431, 55 S. W. 1112; Horan v. Frank, 51 Tex. 405. Lonergan v. Trust Co., 101 Tex. 80, 104 S. W. 1061, 106 S. W. 876, 22 L. R. A. (N. S.) 364, 129 Am. St. Rep. 803; Nichols v. Dixon, 99 Tex. 262, 89 S. W. 765.

The second assignment is overruled.

The third, fourth, fifth, and sixth assignments complain of various rulings of the court, all of which involve the same general principles of law. All are presented by appellants in a group, and will be soon considered by us. Three propositions are made under these assignments:

'First Proposition. A building contractor cannot, by assigning his interest under the contract, deprive materialmen who have no notice thereof of their rights to liens, especially when the contractors could not recover from the owner without satisfying such liens.

"Second Proposition. Within the time fixed for registering liens every person dealing with property is charged with notice of the existence of such liens.

"Third Proposition. When lien is perfected it relates back to the time when the work was done."

None of the three propositions states the law correctly. The rule, as announced by many decisions from an early date to the latest published opinions, is correctly stated in appellee's counter proposition:

"Until notices of subcontractor's claims are given to owner, in accordance with statute, he and contractor may make such settlements as they choose, and owner may make prepayments upon the contract, or may accept assignments of any future estimates to become due upon the same,' or may obligate himself to assume any indebtedness of contractor to others, and should he do so, then such prepayments, assignments, or assumption of liability to others take precedence over all subcontractor's claims, of which the owner had only subsequent notice. * * *"

In the present case the assignment of estimates by the Gordon-Jones Construction Company to the Victoria National Bank and its acceptance by Welder created an obligation upon the owner to pay said fund to the bank and extinguished the contractor's right thereto; therefore this accepted transfer took precedence over all claims of which the owner at the date of the acceptance of the transfer to the bank did not have statutory notice. Harris County v. Donaldson, 20 Tex. Civ. App. 9, 48 S. W. 791; Sunset Brick & Tile Co. v. Stratton, 53 S. W. 703; Harris County v. Campbell, 68 Tex. 22, 3 S. W. 243, 2 Am. St. Rep. 467; Ricker v. Schadt, 5 Tex. Civ. App. 460, 23 S. W. 908; Thelander v. Becker, 199 S. W. 848; Texas Glass & Paint Co. v. S. W. Iron Co., 147 S. W. 620; Texas Glass & Paint Co. v. Crowdus, 193 S. W. 1072 (Sup. Ct.); Beilharz v. Illingsworth, 62 Tex. Civ. App. 647, 132 S. W. 106; South Texas Lumber Co. v. Concrete Construction Co., 139 S. W. 913; Foley v. Houston C. Mfg. Co., 106 S. W. 160; Ogburn Gravel Co. v. Watson Co., 190 S. W. 205; Youngberg v. El Paso Brick Co., 155 S. W. 715; Rice Common School District v. Oil City Iron Works, 180 S. W. 1121; National Bank of Denison v. Coleman, 151 S. W. 1123; Fielder Lumber Co. v. Smith, 151 S. W. 605.

The third, fourth, fifth, and sixth assignments are overruled.

[4] The seventh assignment assails the twentieth fact found by the trial court, viz.: That there was no money due the contractor at the time of the abandonment. The contract was abandoned by the construction company January 29, 1914. All funds payable by the owner to the contractor had been assigned by the contractor to the bank, and the assignment accepted by the owner on December 17, 1913, more than a month previously. The finding is sustained by the evidence. The seventh assignment is overruled.

By the eighth assignment it is contended that a list made by the contractor showing the several balances due to each of the subcontractors, and presented to the owner, was sufficient notice to impound the contract fund in accordance with the statute. The list was not the notice required by the statute, a discussion of which is rendered unnecessary by the following facts: The list was presented to the owner, Mr. Welder, December 22, 1913. The contractor's interest in the funds had been transferred and the transfer accepted by the owner on December 17, 1913.

Each of the assignments presented in briefs for the individual appellants have been con-

sidered by us, and are overruled because of our conclusions hereinabove stated, or for the reason that the notices required by the statute (article 5622) were not given. Our explanation of what constitutes an itemized statement of contract or account as required by the statute (article 5622) is very fully and clearly stated by Associate Justice Brown in the case of Meyers v. Wood, 95 Tex. 67, 65 S. W. 174. The statements rejected by the trial court were not in accordance with the law, and therefore not legal notices.

The contention of the Alamo Iron Works that Mr. Welder became liable to it for 50 per cent. of its claim by reason of a letter offering to pay a 50 per cent. dividend upon the signing of the letter by the Alamo Iron Works, and by the offer to pay the balance in 60 days thereafter, is without merit. The dividend paid was out of the contract fund, and the balance was to have been out of the same fund. That balance is awarded by the judgment herein.

It is admitted by all parties that the calculation of the amount of the claim of the bank was error, and we are requested by appellees to correct the judgment in that respect. Accordingly we here reform the judgment by reducing the amount stated in paragraph 3 of the judgment, which is $14,633.34, to $14,428.20. The reduction here made amounts to $205.14, which amount is to be distributed in accordance with the order of the trial court expressed in the fourth and fifth paragraphs of the judgment rendered by the trial court.

The judgment is reformed as above indicated and affirmed.